THE NEW YORK LIFE INSURANCE AND TRUST COMPANY *v.* CUTLER and others.

A defendant who sets up an equitable title to land, against a mortgagee in good faith of the legal estate without actual notice; in order to affect the latter with constructive notice, by means of his possession at the date of the mortgage, should allege in his answer that he was then in possession, claiming the land as his own. It is not sufficient to allege that the defendant was in possession at, and long before, the execution of the mortgage.

Such an equitable owner of a farm cannot enforce his right against one, who, on the faith of the legal owner's recorded title, purchased another farm of the latter,

charging it with a fixed proportion of a mortgage given by such owner on both farms ; the purchaser having no notice of the equity in respect of the former.

Where one defendant in a foreclosure suit, sets up equities against his co-defendants, respecting the order of sale of different portions of the mortgaged premises ; the decree of sale may direct the master to ascertain and settle those equities and to sell the premises accordingly.

Oct. 16 ; December 30, 1845.

This was a bill to foreclose a mortgage for $4000, dated November 29, 1832, and executed by Abraham Cutler and his wife to the complainants, on one hundred and six acres of land in the town of Lodi, Seneca county, and one hundred and eighty acres in Hector, Tompkins county. Several parties were made defendants, as occupants and subsequent purchasers and incumbrancers.

The defendant Young answered, claiming to be the owner in equity of the farm in Lodi, by a title superior to the mortgage, as well as to the judgments against Cutler. After stating the facts upon which his equity rested, he averred that the complainants had due notice of its existence when the mortgage was executed. He also alleged, that he had been in the undisturbed possession of the farm ever since 1798.

The Seneca County Bank set forth the purchase of the Lodi farm by them, under a judgment against Cutler, in December, 1834, and claimed to be the owners of the equity of 'redemption. They, and also the infant heirs of N. Shannon in their answer, stated that N. Shannon bought the Hector farm of Cutler, who conveyed the same to him under a valid agreement, by which he assumed $2500 of the complainant's mortgage as the share of that farm, and Cutler was to pay the balance in respect of the Lodi farm. Shannon thereupon paid the residue of the price.

The facts which Young claimed to have established, and on which he averred his ownership, were as follows:

Prior to 1818, Cutler procured Young, who was his father-in-law, to become his surety on debts owing by him to two mercantile firms in New York. Judgments were recovered on those debts, by virtue of which the Lodi farm, which was then owned by Young, was sold and bid off by Mr. Platt, the attorney for the creditors, to whom the sheriff conveyed it in 1818. Between

that period and 1828, Cutler paid to the plaintiffs in the judgment an amount satisfactory to them, and thereupon in 1828, their attorney released and conveyed the farm to Cutler.

The complainants proved that in 1832, on the application of Cutler as the owner of the farm and finding his title to be perfect they made him a loan on the mortgage in suit.

The defendant proved that he had been in possession of the farm for forty years, but he failed to make out that the complainants or their agent knew or were informed of his possession or claims, before or when the mortgage was given.

*W. Betts*, for the complainants.

*A. Thompson*, for the defendant Young.

*E. Sandford*, for the Seneca County Bank.

*H. S. Walbridge*, for the Shannon infants.

THE ASSISTANT VICE-CHANCELLOR.—The legal title to the farm in Lodi, was regularly vested in Cutler, when he executed the mortgage to the complainants. The defendant Young, is wholly mistaken when he says that he never was divested of his title, and that Cutler never was seised of the farm.

His real ground of defence is, that Cutler, ever since 1828, has owned the farm in trust for him ; having a naked legal title, but without any interest.

I deem it unnecessary to examine this point, because admitting all that Young claims for it, he does not establish a defence to the mortgage.

He does not claim that the mortgage is affected by the trust, unless the complainants had notice of its existence. Young's answer alleges that they had *due notice ;* but it does not state in what manner it was given to them.

At the hearing it was argued that there was both direct and constructive notice of the trust to the complainants when they took the mortgage.

1. As to direct notice, the testimony wholly fails to establish it.

2. Then as to the constructive notice. The answer alleges that Young has been in the undisturbed possession of the farm ever since the year 1798. Mrs. Cutler proves that he has been in possession for forty years. This is relied upon to show notice to the complainants of his equitable rights. The answer does not allege, nor is there proof, (Cutler's testimony being laid aside,) that the complainants knew or were informed of this possession. It therefore rests on the sole fact that Young occupied the land.

I think the answer does not go far enough, to enable the court to infer notice, under the circumstances of this case. Young's title was divested in 1818 or 1819. There is no pretence that he had any title, legal or equitable, from thence till 1828, though he remained in possession. Then from 1828, to October, 1843, when his answer was put in, he remained in the occupation of the farm in like manner. He knew in 1828, that Cutler had taken a deed of the farm in his own name. Yet we have neither allegation or testimony, that during the next fifteen years, Young ever claimed the land, or did a single act inconsistent with Cutler's full ownership, or indicating any intention ever to interfere with his title.

Under such circumstances, it was incumbent on Young, if he relied on his possession as being notice to the complainants, to state in his answer that he was in possession of the land at the date of the mortgage, claiming it as his own ; and to have proved the character of his possession accordingly. As the case stands, all that he has stated or proved, is entirely consistent with his having been occupying by the mere sufferance of Cutler, or as a tenant under him ; and for aught that appears, if the complainants had been put upon inquiry by learning of his possession, they would on inquiry have found that he was such occupant or tenant. He does not allege or prove that Cutler was not in possession in 1833, by Young's actual possession under him.

The legal presumption is, that after 1819, Young was occupying under Platt, the owner of the land. So far as the complainants had any information, they had a right to rely upon the legal presumption that the possession followed the title under Cutler, as well as under Platt. And Young has not alleged or proved sufficient in regard to the character of his possession, (when it is

considered in connection with the other circumstances,) to deprive the complainants of the benefit of that presumption, or to subject them to the doctrine of constructive notice of Young's alleged rights, as it is maintained in some of the cases, upon possession alone.

I will not therefore enter at all into the controverted questions growing out of that doctrine.

There is another difficulty in the way of Young's defence, which arises from the sale of the Hector farm, to Shannon. Young sets forth this sale, and he does not deny but that Shannon bought in good faith. Nor does he pretend that Shannon had any notice whatever of his equitable claim to the Lodi farm, or of any fac which would preclude Shannon from bargaining with Cutler, on the assumption which Cutler's legal title warranted, that the complainant's mortgage was a valid and perfect lien on both of the farms.

Therefore on Shannon's taking a conveyance of the Hector farm, subject to $2500 only of this mortgage, on the faith of Cutler's legal and recorded title to both farms, Young's latent equity in the Lodi farm, cannot be permitted to intervene to cast a greater burthen than the $2500, on the Hector land.

Shannon on purchasing a legal title in 1837, was not bound to inquire the state of the possession of the Lodi farm in 1833, and cannot be affected by any doctrine of constructive notice in this suit.

The equitable set off which Young brings forward, in Cutler's claim on Shannon, growing out of the Hamilton mortgage ; if not altogether too remote, is too vaguely presented to authorize any decree in regard to it.

This is not the proper stage of the cause, for settling the controversy between Young and the Seneca County Bank.

There must be a decree for a sale of the premises. The Lodi farm is to be sold for the $1500, and arrears of interest, and the Hector lands for the $2500, and interest. The answer of the infants sets forth various equities in respect of the order of sale of the latter, and the decree will direct the master to settle those equities and sell the premises accordingly.

The costs occasioned by Young's defence, must be borne by

him. The residue of the complainant's costs and those of the guardian *ad litem*, are to be apportioned on the two farms, in the same ratio as the mortgage debt.

The other questions between the parties, are not to be affected by the decree.